IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LM General Insurance Company, | ) | Case No.: 4:18-cv-01264-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Daisy Frederick and Daniel Lee McDowell, | ) | |
| | ) | |
| Defendants. | ) | |

This is a breach-of-contract case brought by Plaintiff LM General Insurance Company ("Liberty Mutual" or "Plaintiff") against Defendants Daisy Frederick ("Frederick") and Daniel Lee McDowell ("McDowell"). This case arises out of a personal-injury lawsuit between Frederick and McDowell filed in state court, styled *Frederick v. McDowell*, No. 2016CP3400072 (C.P. Marlboro Cnty. 2018) ("the Underlying Action"). Before the Court are cross-motions for summary judgment (DE 64; DE 65).

Liberty Mutual moves for summary judgment on its Breach of Contract, Specific Performance, and Declaratory Judgment Action claims. (DE 64.) Frederick opposes Liberty Mutual's summary judgment motion. (DE 69.) Frederick also moves for summary judgment on Liberty Mutual's claims, asserting res judicata (claim preclusion), estoppel, waiver, equity, and laches. (DE 65.) Liberty Mutual has responded opposing Frederick's motion for summary judgment. (DE 68.)

1

For the reasons below, the Court denies Liberty Mutual's motion for summary judgment (DE 64) and grants, in part, Frederick's motion (DE 65).

## I. BACKGROUND

### A. Factual Background

#### 1. Procedural History

This action stems from a motor vehicle collision that occurred on April 29, 2015, in Anson County, North Carolina, involving McDowell, who was insured under an automobile policy issued by Liberty Mutual. (DE 28-1.) On April 1, 2016, Frederick filed the Underlying Action in state court. (DE 65-8.) The matter proceeded to trial in January 2018, resulting in a $5 million verdict against McDowell. That judgment was upheld by the South Carolina Court of Appeals and affirmed by the South Carolina Supreme Court, with final judgment entered on May 22, 2024. (DE 65-5; DE 65-6; DE 65-7.)

While post-trial motions were still pending in state court, Liberty Mutual filed the present federal action on May 8, 2018. (DE 1.) Following the denial of a motion to dismiss (DE 25), Liberty Mutual filed an Amended Complaint on March 29, 2019. (DE 28.) The matter was stayed pending final disposition of the Underlying Action. (DE 37.) The stay was lifted on June 12, 2024. (DE 56.) A scheduling order followed. (DE 58.) Cross-motions for summary judgment were filed by both parties on December 20, 2024. (DE 64; DE 65.)

## B.     Factual Background

On June 19, 2015, Frederick's counsel issued a representation letter to Liberty Mutual. (DE 28-2.) On February 16, 2016, Frederick—through counsel—submitted a written offer, demanding payment of all policy limits in exchange for a covenant not to execute against McDowell ("the Offer of Compromise" or "the Offer"). (*See* Pl's. Ex. C, DE 28-3.) The Offer emphasized that all conditions had to be met by March 1, 2016, at 5:00 p.m., and explicitly stated that any inclusion of indemnification or additional terms would constitute a counteroffer. (*Id.*)

On March 1, 2016, Liberty Mutual sent payment via UPS along with the required affidavit from McDowell. The package was delivered and received by Frederick's counsel at 9:18 a.m. that day. (DE 28-4; DE 28-5.) However, Liberty Mutual's package included a proposed "Covenant Not to Execute" containing an indemnification clause—a term precluded by the express language of Frederick's offer. (*See* Pl's. Ex. D, DE 28-4; *see also* Pl's. Ex. C at 4–5 nn.3–4, DE 28-3 at 5–6.)

On March 4, 2016, Frederick's counsel rejected the purported acceptance, returned the checks, and advised Liberty Mutual that it had failed to accept the offer as presented. (DE 28-6.) On March 30, 2016, Liberty Mutual sent a letter to Frederick's counsel explaining that the remaining policy limits had been paid as demanded and that the affidavit from McDowell was provided as required in the demand. Liberty Mutual stated it remained ready and able to settle the claim based on the terms of the Offer of Compromise it had previously accepted and performed under. (DE 28-7.)

Frederick then filed the Underlying Action on April 1, 2016. McDowell's answer did not assert a settlement agreement as a defense. Nor did Liberty Mutual or McDowell make the argument in pretrial proceedings, at trial, or during post-trial motions or appeals. (DE 65-2.)

More than three months after the $5 million verdict, Liberty Mutual filed this federal declaratory action. (DE 1.) Liberty Mutual did not disclose any alleged pre-suit settlement to the state trial court, even while opposing post-trial motions and participating in appellate proceedings. Liberty Mutual also represented to the Marlboro County court that it had entered a Tolling Agreement and Assignment with McDowell where it agreed, among other things, to satisfy any final judgment entered against McDowell, regardless of policy limits. (DE 65-8.) That representation supported the state court's decision to stay execution and waive bond pending appeal. (DE 65-7.)

## II.     LEGAL STANDARD

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

4

is entitled to a judgment as a matter of law.'" *Id.* at 322. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). If the burden of proof at trial would be on the nonmoving party "a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp.*, 477 U.S. at 324. "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied[] . . . ." *Id.* at 332 (Brennan, J., dissenting).

Accordingly, once the movant has made this threshold demonstration, to survive the motion for summary judgment, under Rule 56(e), the nonmoving party must "go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citation omitted). Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Likewise,

5

conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Cts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al., *Federal Practice & Procedure* § 2728 (3d ed. 1998)). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. *See id*. at 659–60.

### III.    DISCUSSION

Although the parties have cross-moved for summary judgment, the central and dispositive issue is whether a settlement agreement was ever formed between Liberty Mutual and Frederick. The Court addresses this threshold issue first.[1]

### A.    Liberty's Purported Acceptance of the Offer of Compromise

---

[1] Because this case arises under the Court's diversity jurisdiction, South Carolina substantive law governs. *See Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004).

Liberty Mutual contends it is entitled to summary judgment on its breach-of-contract and declaratory-judgment claims, asserting that it accepted Frederick's settlement offer and rendered performance in accordance with its terms. (DE 64 at 6.) Under South Carolina law, settlement agreements are treated as contracts. *Byrd v. Livingston*, 398 S.C. 237, 241, 727 S.E.2d 620, 621 (S.C. Ct. App. 2012). It is well established that the law favors the settlement of disputes. *See United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). However, to form a binding and enforceable contract, there must be an offer, acceptance, and valuable consideration. *See Nutt Corp. v. Howell Road, LLC*, 396 S.C. 323, 328, 721 S.E.2d 447, 450 (S.C. Ct. App. 2011).

A valid contract requires a "meeting of the minds" with respect to all essential and material terms. *Byrd*, 398 S.C. at 243, 727 S.E.2d at 622. The requisite meeting of the minds must be based on intentions made known to the other party or that should have been known under the circumstances. *See Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 894 (1989). As the South Carolina Supreme Court has stated, "[p]art of proving that some enforceable contract exists is being able to identify the terms thereof." *Allegro, Inc. v. Scully*, 418 S.C. 24, 35, 791 S.E.2d 140, 146 (S.C. 2016) *abrogated on other grounds by Hall v. UBS Fin. Servs. Inc.*, 435 S.C. 75, 866 S.E.2d 337 (2021).

"At common law, no contract is formed if the acceptance varies the terms of the offer." *Weisz Graphics Div. of Fred B. Johnson Co. v. Peck Indus., Inc.*, 304 S.C. 101, 106, 403 S.E.2d 146, 149 (S.C. Ct. App. 1991) (citing *Sossamon v. Littlejohn*, 241 S.C.

7

478, 129 S.E.2d 124 (1963)). South Carolina law is clear that courts must respect the parties' intent as expressed in the contractual language—which includes the language of the offer. *See id.* ("[A]n acceptance which adds different or additional terms is treated as a counteroffer, which may be accepted or rejected by the other party."); *cf. Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003) ("[T]he cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language.").

These principles render untenable Liberty Mutual's assertion that a contract was formed and fully performed. Frederick's Offer of Compromise made clear that any proposed release containing an indemnification clause would be deemed a rejection and counteroffer. (*See* Pl's. Ex. C at 5 n. 4, DE 28-3 at 6 (explaining that "send[ing] a proposed Release that includes indemnification" would be treated as "a counteroffer" by Frederick (emphasis removed)).) By so doing, Frederick explicitly identified *not* sending the indemnification was a material part of the proposed bargain. This nullifies the possibility that Liberty Mutual accepted by performance and the indemnification was a mere proposal. *Electro-Lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter*, 357 S.C. 363, 369, 593 S.E.2d 170, 173 (S.C. Ct. App. 2004) ("Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree *in a manner invited or required by the offer*." (quoting Restatement (Second) of Contracts § 50(1) (1981) (emphasis added)). Inclusion of the indemnification with the settlement was a counteroffer that rendered the original offer dead.

In short, Liberty Mutual was free to accept or reject the bargain proposed in Frederick's Offer. It chose not to. Frederick's subsequent rejection of Liberty Mutual's counteroffer forecloses any claim that a binding agreement was reached.

Liberty Mutual argues with some force that Frederick's offer was commercially unreasonable and potentially contrary to public policy, particularly insofar as it precluded indemnification for governmental medical liens. (DE 70 at 1–3.) Liberty Mutual contends, too, that Frederick designed the offer to "set up" the insurer for a subsequent bad-faith claim. But Liberty Mutual has directed this Court to no South Carolina authority standing for the proposition that a contract may be enforced on similar facts. Federal courts must "'respond conservatively when asked to discern governing principles of state law' and take care to avoid interpreting that law in a manner that 'has not been approved' by the [South Carolina] Supreme Court . . . ." *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022) (quoting another source). While Liberty Mutual's concerns may be colorable, they do not empower this Court to ignore black-letter law or excuse Liberty Mutual's noncompliance with the Offer's terms. The offered terms must either be accepted or rejected "unconditionally" and in their entirety. *Sossamon*, 241 S.C. at 485–86, 129 S.E.2d at 127–28.

Since no contract was formed, Liberty Mutual cannot sustain a claim for breach, nor is it entitled to specific performance or declaratory relief based on the existence of a purported settlement agreement. *See Branche Builders, Inc. v. Coggins*, 386 S.C. 43, 48, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009) (elements of breach of contract include: (1) existence of a contract; (2) breach; and (3) damages proximately

9

resulting from the breach). Accordingly, Liberty Mutual's motion for summary judgment on its breach-of-contract, declaratory-judgment, and specific-performance claims must be denied.

## B. Frederick's *Tyger River* Demand

Liberty Mutual also seeks a declaratory judgment that Frederick's so-called *Tyger River* demand is void,[2] asserting that South Carolina does not recognize third-party bad-faith claims against insurers. (DE 64 at 13.)

In evaluating whether to grant declaratory relief, the Court is guided by the Fourth Circuit's decision in *Centennial Life Insurance Co. v. Poston*, which instructs district courts to consider "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts . . . ." 88 F.3d 255, 257 (4th Cir. 1996). The Court must evaluate these factors:

(1) The strength of the state's interest in having the issues raised in the federal declaratory action decided in state court;

(2) Whether the issues can be more efficiently resolved in the state court action;

(3) Whether allowing the federal action to proceed would result in unnecessary entanglement between the federal and state court systems due to overlapping factual or legal issues; and

---

[2] This refers to a demand sent pursuant to "South Carolina's seminal bad faith case" that stands for the proposition that "a[] [third-party] insurer ha[s] the duty to settle a claim 'if [i]t was the reasonable thing to do.'" *Hood v. United Servs. Auto Ass'n*, 445 S.C. 1, 8–9, 910 S.E.2d 767, 771–72 (2025), *reh'g denied* (Jan. 24, 2025) (quoting *Tyger River Pine Co. v. Maryland Cas. Co.*, 170 S.C. 286, 294, 170 S.E. 346, 349 (1933)).

10

(4) Whether the federal declaratory action is being used for "procedural fencing"—that is, to secure a more favorable forum or preempt state court jurisdiction.

*Poston*, 88 F.3d at 257 (alterations adopted and quoting another source). Putting aside the likely weight of these abstention considerations—which strongly counsel against issuing a declaration on unsettled or speculative state-law questions—Frederick's *Tyger River* demand has not resulted in a bad-faith claim, nor has she said any intent to assert one. Indeed, Frederick has expressly argued that such a claim may never materialize. As she notes, Liberty Mutual has already agreed to satisfy the full judgment if it fails to establish the existence of a pre-suit settlement agreement. (DE 69 at 11.) Under these circumstances, adjudicating the validity of the *Tyger River* demand or Frederick's standing to bring such a claim would be premature.

Federal courts are courts of limited jurisdiction, constrained by Article III to resolving actual "Cases" and "Controversies." U.S. Const. Art. III, § 2. They do not issue advisory opinions, opine on hypothetical legal disputes, or engage in abstract resolution of contingent claims. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question."). Because there is no live controversy as to any *Tyger River* bad-faith claim and because resolving this issue would amount to issuing an advisory opinion, the Court declines to reach the question of the validity of Frederick's demand or whether she could assert a bad-faith claim under South Carolina law.

### C.     Frederick's Equitable Grounds for Dismissal

In light of the Court's ruling that Liberty Mutual has failed to establish the existence of a valid and enforceable contract, its claims cannot proceed. Although Frederick has cross-moved for summary judgment, she does not expressly seek dismissal on the independent ground of contract non-formation. Nevertheless, the Court's reasoning in denying Liberty Mutual's motion for summary judgment on the merits indicates that summary judgment for Frederick may be appropriate.

Under Rule 56(f) of the Federal Rules of Civil Procedure, the Court may grant summary judgment for a non-moving party sua sponte where the legal and factual issues have been fully presented and the opposing party has had a fair opportunity to respond. *See* Rule 56(f)(1), Fed. R. Civ. P. Accordingly, the parties are placed on notice that the Court is considering entering summary judgment for Frederick because no contract was formed and thus no viable claim exists. The parties may file supplemental briefing addressing this issue within fifteen (15) days of the date of this Order.

Given the procedural posture of this matter and the potential mootness of Frederick's remaining equitable arguments for summary judgment, the Court declines to reach those independent grounds at this time. Frederick's additional grounds for summary judgment are, therefore, denied without prejudice.

## IV.    CONCLUSION

For all these reasons, Plaintiff LM General Insurance Company's motion for summary judgment (DE 64) is **DENIED**, and Defendant Daisy Frederick's motion for summary judgment (DE 65) is **DENIED WITHOUT PREJUDICE**.

Under Rule 56(f), the Court is considering entering summary judgment for Defendant Frederick based on the absence of a valid contract. The parties may file supplemental briefs addressing this issue within fifteen (15) days of the date of this Order.

**IT IS SO ORDERED.**

_____
Joseph Dawson, III
United States District Judge

Florence, South Carolina
June 18, 2025