IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LM General Insurance Company, | ) | Case No.: 4:18-cv-01264-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION GRANTING** |
| Daisy Frederick and Daniel Lee McDowell, | ) | **SUMMARY JUDGMENT FOR** |
| | ) | **DEFENDANTS** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court in a breach-of-contract action filed by Plaintiff LM General Insurance Company ("Liberty Mutual" or "Plaintiff") against Defendants Daisy Frederick ("Frederick") and Daniel Lee McDowell ("McDowell") (collectively, "Defendants"). The dispute stems from a personal-injury action brought by Frederick against McDowell in state court, styled *Frederick v. McDowell*, No. 2016-CP-34-00072 (C.P. Marlboro Cnty. 2018) (the "Underlying Action"). On June 18, 2025, the Court denied the parties' cross-motions for summary judgment. (DE 79.) In doing so, the Court determined that "no contract was formed." (*Id.* at 9.) However, the Court also observed that Frederick had not sought summary judgment on the issue of contract formation. (*Id.* at 12.) Accordingly, the Court provided notice that it was considering entering summary judgment in Frederick's favor and directed the parties to file supplemental briefs within fifteen (15) days. (*Id.* at 13.)

1

Having reviewed the supplemental submissions, the record, and the applicable law, the Court now grants summary judgment in favor of Defendants for the reasons set forth below.

## I.　　BACKGROUND[1]

### A. Procedural History Prior to Summary Judgment

This action arises from an April 29, 2015, motor vehicle collision in Anson County, North Carolina, involving Defendant McDowell, who was at the time insured under an automobile policy issued by Plaintiff Liberty Mutual. (DE 28; DE 28-1.) On April 1, 2016, Frederick filed the Underlying Action in state court. (DE 65-8.) The matter proceeded to trial in January 2018, resulting in a $5 million verdict against McDowell. That judgment was upheld by the South Carolina Court of Appeals and affirmed by the South Carolina Supreme Court, with final judgment entered on May 22, 2024. (DE 65-5; DE 65-6; DE 65-7.)

While post-trial motions were still pending in state court, Liberty Mutual filed the present federal action on May 8, 2018. (DE 1.) Following the denial of a motion to dismiss (DE 25), Liberty Mutual filed an Amended Complaint on March 29, 2019. (DE 28.) The matter was stayed pending final disposition of the Underlying Action. (DE 37.) The stay was lifted on June 12, 2024. (DE 56.) A scheduling order followed. (DE 58.) Cross-motions for summary judgment were filed by both parties on December 20, 2024. (DE 64; DE 65.)

---

[1] For consistency and context, the Procedural History of the Underlying Action and Factual Background are taken from the Court's Order denying summary judgment (DE 79).

### B. Facts Giving Rise to this Dispute

On June 19, 2015, Frederick's counsel issued a representation letter to Liberty Mutual. (DE 28-2.) On February 16, 2016, Frederick—through counsel—submitted a written offer, demanding payment of all policy limits in exchange for a covenant not to execute against McDowell ("the Offer of Compromise" or "the Offer"). (*See* Pl's. Ex. C, DE 28-3.) The Offer emphasized that all conditions had to be met by March 1, 2016, at 5:00 p.m., and explicitly stated that any inclusion of indemnification or additional terms would constitute a counteroffer. (*Id.*)

On March 1, 2016, Liberty Mutual sent payment via UPS along with the required affidavit from McDowell. (DE 28-4.) The package was delivered and received by Frederick's counsel at 9:18 a.m. that day. (DE 28-5.) However, Liberty Mutual's package included a proposed "Covenant Not to Execute" containing an indemnification clause—a term precluded by the express language of Frederick's offer. (*See* Pl's. Ex. D, DE 28-4; *see also* Pl's. Ex. C at 4–5 nn.3–4, DE 28-3 at 5–6.)

On March 4, 2016, Frederick's counsel rejected the purported acceptance, returned the checks, and advised Liberty Mutual that it had failed to accept the offer as presented. (DE 28-6.) On March 30, 2016, Liberty Mutual sent a letter to Frederick's counsel explaining that the remaining policy limits had been paid as demanded and that the affidavit from McDowell was provided as required in the demand. (DE 28-7.) Liberty Mutual stated it remained ready and able to settle the claim based on the terms of the Offer of Compromise it had previously accepted and performed under. *(Id.)*

Frederick then filed the Underlying Action on April 1, 2016. McDowell's answer did not assert a *settlement* agreement as a defense. Nor did Liberty Mutual or McDowell make the argument in pretrial proceedings, at trial, or during post-trial motions or appeals. (*See* DE 65-2.)

More than three months after the $5 million verdict, Liberty Mutual filed this federal declaratory action. (DE 1.) Liberty Mutual did not disclose any alleged pre-suit settlement to the state trial court, even while opposing post-trial motions and participating in appellate proceedings. Liberty Mutual also represented to the Marlboro County court that it had entered a Tolling Agreement and Assignment with McDowell where it agreed, among other things, to satisfy any final judgment entered against McDowell, regardless of policy limits. (DE 65-8.) That representation supported the state court's decision to stay execution and waive bond pending appeal. (DE 65-7.) On June 18, 2025, this Court denied both parties' motions for summary judgment (DE 64; DE 65). (DE 79.)[2]

C. **Post Summary Judgment Proceedings**

Although the Court denied Liberty Mutual's motion for summary judgment and denied Frederick's cross-motion without prejudice (DE 79), in doing so, the Court concluded that Liberty Mutual's inclusion of an indemnification clause in its proposed release constituted a counteroffer rather than an acceptance of Frederick's offer of

---

[2] The Court's prior Order (DE 79) states that Liberty Mutual's motion for summary judgment was denied and that Frederick's motion was "granted, in part." (DE 79 at 2). Upon review, the Court clarifies that Frederick's cross-motion was in fact denied without prejudice, as the Court expressly invoked Rule 56(f) to allow supplemental briefing on the dispositive issue of contract formation. Accordingly, the "granted, in part" language appears to have been a scrivener's error. For clarity, both parties' motions were denied at that stage.

compromise, thereby precluding contract formation. The Court further advised the parties, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, that it was considering entering summary judgment in favor of Frederick on the ground that no enforceable settlement agreement had been formed, and directed that any supplemental briefing on the issue be filed within fifteen (15) days of the order.

On July 3, 2025, Frederick timely filed her supplemental brief urging the entry of summary judgment in her favor. (DE 81.) On July 10, 2025, Liberty Mutual moved for an extension of time to respond to Frederick's filing. (DE 82.) Frederick opposed the motion the following day, arguing that the Court's order did not authorize responsive briefing and that Liberty Mutual's request was untimely. (DE 83.)

Despite the expiration of the Court's deadline, Liberty Mutual filed a supplemental brief on July 11, 2025, opposing entry of summary judgment for Frederick and alternatively requesting certification of certain questions of law to the South Carolina Supreme Court. (DE 84.) On July 18, 2025, Frederick filed a reply, asserting that Liberty Mutual's filing was both untimely and unauthorized, and again urging the Court to grant summary judgment in her favor pursuant to Rule 56(f). [3] (DE 85.)

---

[3]     Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure permits extensions after a deadline has expired only upon a showing of "excusable neglect." Liberty Mutual has offered no such showing; its failure to comply was a matter of counsel's personal scheduling and not an unforeseen circumstance beyond counsel's control. *See Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996) (excusable neglect is not easily demonstrated and mere oversight does not suffice). Accordingly, Liberty Mutual's motion for extension (DE 82) is denied, and its July 11, 2025, supplemental filing (DE 84) is untimely and unauthorized.

Nevertheless, the Court has reviewed the arguments raised in Liberty Mutual's supplemental brief and notes that, even if considered, those arguments do not alter the

## II.     LEGAL STANDARD

Under Rule 56(f) of the Federal Rules of Civil Procedure, "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant [a summary judgment] motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Rule 56(f) Fed. R. Civ. P. Thus, "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting another source)). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). Nonetheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by

---

Court's conclusion that no enforceable settlement contract was formed and that Frederick is entitled to judgment as a matter of law.

summary judgment is appropriate." *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

### III.   DISCUSSION[4]

**A. Contract Formation**

Frederick contends she is entitled to summary judgment because Liberty Mutual did not accept her February 16, 2016, Offer of Compromise but instead made a counteroffer. (DE 81.) Under South Carolina law, settlement agreements are treated as contracts. *Byrd v. Livingston*, 398 S.C. 237, 241, 727 S.E.2d 620, 621 (S.C. Ct. App. 2012). It is well established that the law favors the settlement of disputes. *See United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). However, to form a binding and enforceable contract, there must be an offer, acceptance, and valuable consideration. *See Nutt Corp. v. Howell Road, LLC*, 396 S.C. 323, 328, 721 S.E.2d 447, 450 (S.C. Ct. App. 2011).

A valid contract requires a "meeting of the minds" with respect to all essential and material terms. *Byrd*, 398 S.C. at 243, 727 S.E.2d at 622. The requisite meeting of the minds must be based on intentions made known to the other party or that should have been known under the circumstances. *See Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 894 (1989). As the South Carolina Supreme Court has stated, "[p]art of proving that some enforceable contract exists is being able to identify the terms thereof." *Allegro, Inc. v. Scully*, 418 S.C. 24, 35, 791 S.E.2d 140, 146 (S.C.

---

[4]     Because this case arises under the Court's diversity jurisdiction, South Carolina substantive law governs. *See Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004).

7

2016) *abrogated on other grounds by Hall v. UBS Fin. Servs. Inc.*, 435 S.C. 75, 866 S.E.2d 337 (2021).

"At common law, no contract is formed if the acceptance varies the terms of the offer." *Weisz Graphics Div. of Fred B. Johnson Co. v. Peck Indus., Inc.*, 304 S.C. 101, 106, 403 S.E.2d 146, 149 (S.C. Ct. App. 1991) (citing *Sossamon v. Littlejohn*, 241 S.C. 478, 129 S.E.2d 124 (1963)). South Carolina law is clear that courts must respect the parties' intent as expressed in the contractual language—which includes the language of the offer. *See id.* ("[A]n acceptance which adds different or additional terms is treated as a counteroffer, which may be accepted or rejected by the other party."); *cf. Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003) ("[T]he cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language.").

The Offer expressly prohibited the inclusion of an indemnification provision and warned that such a provision would constitute a rejection. (DE 28-3 at 4–5 & nn. 3–4.) Liberty Mutual nevertheless tendered a proposed "Covenant Not to Execute" containing indemnification language, which materially altered the terms of the Offer and prevented the formation of a contract. (DE 28-4; DE 28-6.) Liberty Mutual, in contrast, asserts that it satisfied the material terms of the Offer by timely tendering payment of policy limits along with McDowell's affidavit. (DE 28-4; DE 28-5; DE 28-7.) It maintains that the indemnification clause did not alter the agreement in any material respect and was consistent with public policy concerns regarding liens. (DE 84.) Liberty Mutual, therefore, contends that a binding settlement was formed and

8

seeks enforcement of the agreement through its breach of contract and declaratory judgment claims. The Court is unpersuaded.[5]

The undisputed record establishes that Liberty Mutual did not accept the terms of Frederick's Offer of Compromise but instead counteroffered. Frederick's February 16, 2016, offer explicitly required that no indemnification provision be included in any proposed release and warned that such an inclusion would constitute a counteroffer and rejection. (DE 28-3 at 4–5 & nn. 3–4.) Despite this clear directive, Liberty Mutual delivered a proposed "Covenant Not to Execute" on March 1, 2016, that contained an indemnification clause obligating Frederick to hold Liberty Mutual and McDowell harmless from claims by lienholders. (DE 28-4.) Frederick promptly rejected Liberty Mutual's purported acceptance and returned the tendered payment. (DE 28-6.)

By so doing, Frederick explicitly identified that *not* sending the indemnification was a material part of the proposed bargain. This nullifies the possibility that Liberty Mutual accepted by performance, and the indemnification was a mere proposal. *Electro-Lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter*, 357 S.C. 363, 369, 593 S.E.2d 170, 173 (S.C. Ct. App. 2004) ("Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree *in a manner invited or required by the offer*." (quoting Restatement (Second) of Contracts § 50(1) (1981) (emphasis added)). Inclusion of the indemnification with the settlement was a

---

[5] Although Liberty Mutual's supplemental brief (DE 84) was filed after the Court's deadline and without authorization, the Court has reviewed its arguments in the alternative. Even if considered, those arguments do not affect the Court's conclusion that no enforceable settlement contract was formed.

counteroffer that rendered the original offer dead. Liberty Mutual delivered a proposed "Covenant Not to Execute" on March 1, 2016, that contained an indemnification clause obligating Frederick to hold Liberty Mutual and McDowell harmless from claims by lienholders. (DE 28-4.) Frederick promptly rejected Liberty Mutual's purported acceptance and returned the tendered payment. (DE 28-6.)[6]

In short, Liberty Mutual was free to accept or reject the bargain proposed in Frederick's Offer. It chose not to. Frederick's subsequent rejection of Liberty Mutual's counteroffer forecloses any claim that a binding agreement was reached.

### B. Alternative Defenses to Summary Judgment

#### 1. Public Policy

Liberty Mutual contends that Frederick's Offer of Compromise violated public policy because it excluded indemnification for governmental liens and allegedly constituted a "set-up" designed to expose its insured to an excess verdict. On this basis, Liberty Mutual further suggests that the offer was inconsistent with the protections afforded by the Tyger River doctrine. (DE 84 at 2–4.)

These arguments are unavailing. First, the dispositive issue here is one of contract formation. As the Court has already held, Liberty Mutual's inclusion of an

---

[6] Liberty Mutual argues the Court could enforce the purported settlement while severing the indemnification clause under a "blue-pencil" approach. *See* DE 84 at 3–4. That argument is unavailing. South Carolina law disfavors judicial rewriting of material settlement terms. See *Damico v. Lennar Carolinas, LLC*, 437 S.C. 596, 604, 879 S.E.2d 746, 751 (2022) (rejecting "blue-penciling" where it would alter a material term); *S.C. DOT v. M & T Enters. of Mt. Pleasant, LLC*, 379 S.C. 645, 657, 667 S.E.2d 7, 13–14 (Ct. App. 2008) (courts must construe and enforce contracts as written to preserve freedom of contract). Here, the indemnification provision was expressly identified in Frederick's Offer as a material term, the inclusion of which would constitute rejection. Severing it would not preserve, but rather re-write, the parties' bargain.

indemnification clause in its proposed Covenant Not to Execute constituted a counteroffer, not an acceptance. (DE 79 at 8–9.) Under settled South Carolina law, "[a]n acceptance which adds different or additional terms is treated as a counteroffer, which may be accepted or rejected by the other party." *Weisz Graphics*, 304 S.C. at 106, 403 S.E.2d at 149. That conclusion is dictated by black-letter principles of contract law and does not turn on Liberty Mutual's view of commercial reasonableness or public policy.

Second, this Court is not free to revise the parties' negotiations in the name of public policy. The South Carolina Supreme Court has cautioned against judicial modification of material contract terms, recognizing that such an approach would undermine the principle of freedom of contract. *See Damico*, 879 S.E.2d at 751. To accept Liberty Mutual's position would require the Court to supply an indemnification term that Frederick explicitly and repeatedly rejected—something the law does not permit.

Finally, Liberty Mutual's reliance on *Tyger River* is misplaced. As this Court has already concluded, "there is no live controversy as to any Tyger River bad-faith claim." (DE 79 at 11.) Liberty Mutual itself represented in the Underlying Action that it had entered into an agreement obligating it to satisfy the full judgment against its insured regardless of policy limits. (*Id*. at 3–4.) Having made that representation, Liberty Mutual cannot now invoke the specter of speculative bad-faith litigation to excuse its failure to accept Frederick's offer on the terms presented.

11

Public policy favors the enforcement of settlements voluntarily reached through mutual assent. But public policy does not authorize the Court to enforce a bargain Frederick never made. Liberty Mutual's public-policy arguments, therefore, fail. Equally, while Liberty Mutual raises public policy concerns regarding the protection of governmental liens, those concerns do not alter the conclusion that no enforceable settlement agreement was formed in this case. Accordingly, Frederick is entitled to summary judgment under Rule 56(f).

### 2. Certification Request

In the alternative, Liberty Mutual asks this Court to certify questions of law to the South Carolina Supreme Court. (DE 84.) That request is both procedurally improper and substantively unwarranted. (*See* n. 3 supra.) As explained above, the dispositive issue is one of basic contract law—whether Liberty Mutual's inclusion of an indemnification clause in its purported acceptance created a counteroffer. South Carolina law provides clear guidance on this point. *See, e.g., Weisz Graphics*, 304 S.C. at 106, 403 S.E.2d at 149. Federal courts must "respond conservatively when asked to discern governing principles of state law" and avoid interpretations "not approved" by the state supreme court. *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022). Because controlling precedent resolves the matter, certification is unnecessary.

Moreover, Rule 244 of the South Carolina Appellate Court Rules permits certification only when a decision "may be determinative of the cause then pending." Here, the Court's ruling rests on established principles of contract formation, not on any unsettled question of South Carolina law. Accordingly, certification would serve

12

no purpose. Accordingly, Liberty Mutual's request for certification is, therefore, denied.[7]

Accordingly, the Court rejects Liberty Mutual's public policy arguments and declines to certify a question of law to the South Carolina Supreme Court.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that no enforceable settlement agreement was formed between Liberty Mutual and Defendants. Liberty Mutual's inclusion of an indemnification provision in its proposed covenant not to execute materially altered the terms of Frederick's Offer of Compromise and, therefore, constituted a counteroffer. Because there was no meeting of the minds, no valid contract was formed.

Accordingly, summary judgment is entered in favor of **Defendants Daisy Frederick and Daniel Lee McDowell** pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Plaintiff LM General Insurance Company's claims for breach of contract, declaratory judgment, and specific performance are DISMISSED WITH PREJUDICE. No claims remain for adjudication, and this case is hereby CLOSED.

Liberty Mutual's motion for extension of time (DE 82) is DENIED, and its supplemental filing (DE 84) is deemed untimely and unauthorized. Even if considered, however, those arguments do not alter the Court's conclusion. Liberty

---

[7] Liberty Mutual declined to raise its alleged settlement defense in the Underlying Action or on appeal. Having bypassed the South Carolina courts, it cannot now seek certification as a substitute for arguments it elected not to pursue before final judgment was entered and affirmed.

13

Mutual's request for certification to the South Carolina Supreme Court is likewise **DENIED**.

Finally, in light of this ruling, the Court need not reach Frederick's alternative equitable defenses—including res judicata, estoppel, waiver, laches, and related arguments—as they are rendered moot by the dispositive finding of no contract formation.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 26, 2025